UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| WILLIAM O. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 14-084-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| DENNY PEYMAN, Individually and in | ) | **MEMORANDUM OPINION** |
| His Official Capacity as Sheriff of Jackson | ) | **AND ORDER** |
| County, Kentucky, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On April 7, 2014, Plaintiff William Smith filed this case under 42 U.S.C. § 1983, alleging the deprivation of his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, as well as related state claims. [Record No. 1] The matter is pending for consideration of Defendant Denny Peyman's motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Record No. 30] For the reasons set forth below, the defendant's motion will be denied, in part, and granted, in part.

**I.**

This case involves an ongoing political quarrel between the Jackson County Judge Executive, William Smith, and Jackson County Sheriff Denny Peyman. Although the parties do not agree on the relevant facts, the record reflects that, several years prior to the matters in question, problems developed between the two. Within Peyman's first year as sheriff in 2011, the officials were at odds over the Jackson County payroll system. [Record No. 30-1, p. 4] According to Peyman, although the Jackson County Fiscal Court typically paid for

court security, in March of 2011 he was advised that the Sheriff's office would be responsible for these payments. [*Id.*, p. 7] In addition, the Fiscal Court reduced the Sheriff's yearly budget allocation for deputy payroll. [*Id.*] The plaintiff counters that the changes were made because Kentucky law allocates courthouse security funding to the Sheriff. [Record No. 31, p. 2]

In August 2012, the Kentucky State Auditor conducted an audit of the Sheriff's office, reporting irregularities in expenditures. [Record No. 31, p. 4] Debate erupted between Smith and Peyman regarding the amount of money the Sheriff's office owed to the county. [Record No. 30-1, p. 9] The plaintiff cites "low revenue that year, changes in how grant monies and coal severance money could be used, and the lack of reimbursement from the Sheriff" for the Fiscal Court's decision to suspend advanced payroll funding to the Sheriff's office. [Record No. 31, p. 4] Courthouse security "seemed to be in jeopardy to the point that a Circuit Judge threatened to close the courthouse" unless security personnel were paid. [Record No. 27, p. 113]

By October of the same year, Judge Executive Smith had eliminated the positions for the Sheriff's deputies and created the Jackson County Police Force by emergency order. [Record No. 31, p. 4] The newly-formed police force took the place of the deputies in providing courthouse security under the supervision of the Jackson County Judge Executive. [*Id.*, p. 6] In addition, grant money from the Appalachian High Intensity Drug Trafficking Area ("HIDTA") that had previously funded the Sheriff's office began flowing directly to the Jackson County Police Department instead. [Record No. 27, pp. 32-33] On November 5, 2013, the Jackson Fiscal Court, spearheaded by Smith, filed a lawsuit against Sheriff Peyman, seeking repayment of payroll funds. [*Id.*]

-2-

Meanwhile, the record suggests that the Jackson County Fiscal Court was encountering financial troubles of its own. Two Jackson County audit reports for 2011 and 2012 found inconsistent monthly bank reconciliations by the Fiscal Court and inaccurate account balances attributed to "an attempt to circumvent controls and manipulate the financial statement amounts." [Record No. 30-1, p. 21]

According to Peyman, in the fall of 2013, assets belonging to the Sheriff's office – including "vehicles, weapons, leathers, [and] uniforms" – were taken from a storage facility by Smith under threat of arrest and appropriated to the newly-formed county police force. [Record No. 30-1, p. 14] Smith, on the other hand, argues that the property belonged to Jackson County and not to the Sheriff's office. [Record No. 19, p. 34] Peyman made a series of demands for the return of this property. [Record No. 30-1, p. 15] On January 14, 2014, after his demands went unanswered, Peyman arrested Executive Judge Smith, charging him with organized crime, falsifying business records, forgery, criminal facilitation, tampering with public records, and abuse of public trust. [Record No. 20, pp. 5, 11] Smith alleges that, intending to embarrass and humiliate the Judge Executive, Peyman made the arrest "in the presence of a media contingent [Peyman] had previously notified to be present." [Record No. 1, p. 2] Peyman did not obtain a warrant before the arrest, but the parties dispute whether he sought legal advice. [Record No. 31, p. 8] On February 6, 2014, the charges against Smith were dismissed. [*Id.*]

Smith then filed this suit against Peyman, individually and in his official capacity as Jackson County Sheriff. [Record No. 1] Smith claims violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution for false arrest and retaliation under 42 U.S.C. § 1983. Additionally, he raises state law claims of malicious prosecution

and false imprisonment, seeking damages, including $5,000,000.00 in punitive damages. [Record No. 1, p. 4]  Defendant Peyman now moves the Court for summary judgment in his favor on the merits of the claims.

## II.

Summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).  A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.  That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists.  *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008).  Once the moving party has met its burden of production, the nonmoving party must present "significant probative evidence" of a genuine dispute in order to defeat the motion for summary judgment.  *Chao*, 285 F.3d at 424.  The nonmoving party cannot rely upon the assertions in its pleadings; rather, it must come forward with probative evidence, such as sworn affidavits, to support its claims.  *Celotex*, 477 U.S. at 324.  In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

-4-

When the question is one of qualified immunity, however, the analysis is somewhat altered.  In ruling on a motion for summary judgment based on the defense of qualified immunity, the existence of a disputed, material fact does not necessarily preclude summary judgment.  Even if there is a material fact in dispute, summary judgment is appropriate if the Court finds that – viewing the facts in the light most favorable to the plaintiff – the plaintiff has failed to establish a violation of clearly established constitutional law.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996).

## III.

### A.    Individual Capacity Federal Claims

In reviewing the § 1983 claims, the Court must determine whether the plaintiff has established that: "(1) he was deprived of a right secured by the Constitution or the laws of the United States, and (2) the deprivation as caused by a person acting under the color of state law."  *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  If a plaintiff "fails to make a showing on any essential element of a § 1983 claim," the claim must fail.  *Id.*  There is no dispute that Peyman, as Sheriff, acted under color of state law.  [Record No. 30-1, p. 4]  Therefore, the relevant question to both of Smith's constitutional claims is whether he was "deprived of a right secured by the Constitution or the laws of the United States."  *Id.*

### 1.    Fourth Amendment False Arrest

Smith challenges the validity of his arrest under the Fourth Amendment's prohibition against unreasonable seizures, made applicable to the states through the Fourteenth Amendment.  Peyman argues that he is entitled to qualified immunity from Smith's Fourth Amendment claim.  The doctrine of qualified immunity is "an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does

-5-

not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Carter v. Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Implicit in the qualified immunity doctrine is the recognition that government officials, acting reasonably, may err. *Dunigan v. Noble*, 390 F.3d 486, 492 (6th Cir. 2004).

In resolving questions of qualified immunity at the summary judgment stage, courts engage in a two-pronged inquiry.  The first question is whether the facts, "taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right."  *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (quoting *Saucier*, 533 U.S. at 201). The second prong of the qualified-immunity analysis asks whether the right in question was "clearly established" at the time of the violation.  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Governmental actors are shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Id.*  In response to an assertion of qualified immunity, "the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).  The Court must consider whether, "taken in the light most favorable to the party asserting the injury," the facts alleged show the Sheriff's conduct violated a constitutional right.  *Saucier,* 533 U.S. at 201.

Under the first prong of the qualified immunity analysis, it is well-settled that an arrest without probable cause violates the Fourth Amendment.  *Donovan v. Thames*, 105 F.3d 291, 297-98 (6th Cir. 1997).  The existence of probable cause of a related offense will excuse a lack of probable cause for other offenses charged, and the offense for which there is

probable cause to arrest need not be closely related to or based on the same conduct as the offense for which the plaintiff was arrested. *Devenpeck v. Alford*, 543 U.S. 146, 154 (2004). Thus, to succeed on his summary judgment motion on Smith's false arrest claim, Peyman need only demonstrate that the facts viewed in the light most favorable to the plaintiff constitute probable cause for at least one charge at the time of the arrest. In contrast, to defeat Peyman's assertion of qualified immunity, Smith must show that his version of the facts suggests that a reasonable officer could not believe that probable cause existed for each offense. Simply put, if probable cause existed to arrest Smith for *any* offense, Peyman will be entitled to qualified immunity. Further, Peyman's motivation for arresting Smith is not relevant to the determination of probable cause. An arresting officer's "subjective reason for making the arrest need not be the criminal offense to which the known facts provide probable cause." *Id.*

Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005). To determine whether an arresting officer had probable cause to arrest a plaintiff, the Court must consider "the totality of the circumstances and whether the 'facts and circumstances' of which [the arresting officer] had knowledge at the moment of the arrest would justify a prudent person in believing that the arrested person had committed an offense." *Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010). Thus, the question becomes whether a reasonable officer in Peyman's position would believe that the arrest violated Smith's constitutional rights. To determine whether a reasonable officer would believe that he lacked probable cause, the Court must look at the information possessed by Peyman at the time. *See Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008).

In this case, Peyman claims that he had probable cause to arrest Smith for engaging in organized crime (KRS § 506.120), abuse of public trust (KRS § 522.050), falsifying business records (KRS § 517.050), forgery (KRS § 516.030), criminal facilitation (KRS § 506.080), and tampering with public records (KRS § 519.060).

### a.    Organized Crime

Smith was arrested and charged with engaging in organized crime.  Under Kentucky law, this charge requires that "a person, with the purpose to establish or maintain a criminal syndicate or to facilitate any of its activities" engage in "extortion or coercion in violation of KRS § 514.080 … [or] any theft offense as defined in KRS Chapter 514."  Ky. Rev. Stat. Ann. §§ 506.120(1)(a), 506.120(3)(a)-(c).    In turn, the relevant theft offenses in KRS Chapter 514 require the specific intent to "deprive another of his property" or "obtain property of another."  *See* Ky. Rev. Stat. Ann §§ 514.030, 514.040, 514.080.

The defendant premises this charge on the plaintiff's alleged theft of the Sheriff's assets and allegedly inaccurate accounting practices of the Fiscal County Court.  [Record No. 30-1, pp. 29-30]  Peyman relies on the testimony of Keene and Hays, who indicate that Smith exercised control over vehicles, weapons, radios, and other assets belonging to the Sheriff's office.  [Record Nos. 24, 26]  In addition, Keene testified that the items were removed under the threat of arrest.  [Record No. 24]  However, the plaintiff argues that he appropriated the assets under claim of legal right, not with the requisite criminal intent. [Record No. 31, p. 21]  Relying on the County Treasurer's testimony, Smith alleges that the vehicles were titled in the name of Jackson County and did not belong to the Sheriff. [Record No. 27, p. 141]  Further, Smith alleges that the Sheriff knew, at the time of the

-8-

arrest, that the assets had been claimed as County property, precluding probable cause under this charge.  [Record No. 21, p. 22]

### b.      Public Record Charges

A number of the charges levied against Smith allegedly result from the same body of evidence.  These charges include: (i) abuse of public trust, (ii) falsifying public records, (iii) criminal facilitation, and (iv) tampering with public records.

Under Kentucky Revised Statute § 522.050, a public servant commits an abuse of public trust when:

> (a)      He or she obtains public money or property subject to a known legal obligation to make specified payment or other disposition, whether from the public money or property or its proceeds; and
>
> (b)      He or she intentionally deals with the public money or property as his or her own and fails to make the required payment or disposition.

KRS. § 522.050(1)(a)-(b).  Under Kentucky law, a person falsifies business records when, "with intent to defraud," he "makes or causes a false entry to be made in the business records of an enterprise" under KRS § 517.050.  Criminal facilitation occurs when a person, "acting with knowledge that another person is committing or intends to commit a crime, […] engages in conduct which knowingly provides such person with means or opportunity" to commit the crime.  KRS § 506.080(1).  Finally, a charge of tampering with public records requires that a person "knowingly makes a false entry in or falsely alters any public record." KRS § 519.060(1)(a).

According to Peyman, the 2011 and 2012 Jackson County audit reports, as well as "personal knowledge from his own observations and the reports of others," gave rise to probable cause to arrest Smith for violation of these statutes.  [Record No. 30-1, p. 31]

Peyman relies on Keene's testimony that a missing Kubota tractor, owned by the Sheriff's office, was found in Smith's barn and was not returned. [Record No. 24] The defendant alleges that Smith also refused to allow line item budget items for training and expenses for the Sheriff's office. [Record No. 26, pp. 27-34] Peyman suggests that false accounting entries were intentionally made by the Fiscal Court, including multiple bank reconciliations. He points to the audit report, which states that, "[when] auditors inquired why there were multiple reconciliations, they were told it was an attempt to make their financial situation look better." [Record No. 19-32, p. 4]

The charges also involve Smith's association with Jackson County Treasurer Beth Sallee. Peyman claims that "numerous items were addressed in the audit reports that created cause to believe Smith had acted to facilitate Sallee's commission of illegal acts." [Record No. 30-1, p. 34] Specifically, Peyman alleges that, overseen by Smith, Sallee failed to use accounting codes, inaccurately reported accounts, improperly made payments to both Judge Executive and County Treasurer, and intentionally manipulated the accounts "to make the financial situation look better." [Record Nos. 19-32, 27]

Smith argues that, although the County Treasurer used "faulty accounting methods," she was merely attempting "to do what she thought was legally required of her." [Record No. 31, p. 24] Conceding that the Fiscal Court "incorrectly paid some debts out of the wrong county funds or made other financial errors common to local government finances all around the state," Smith nevertheless insists that the audit reports and press release did not give rise to probable cause, as they neither "suggested that any money had been misappropriated from the County, by anyone," nor faulted the Judge Executive with the inadequate accounting methods. [Record No. 31, p. 11] According to Smith, Peyman was aware of the fact that

-10-

Beth Sallee did not "manipulate figures . . . to abuse the public trust; quite the contrary, she did so in the mistaken belief that the law required it."  [Record No. 31, p. 12]

### c.      Forgery

Section 516.030(1) of the Kentucky Revised Statutes codifies the crime of forgery in the second degree.  The elements of this crime are: (1) intent to defraud or deceive another (2) by falsely making or completing a written instrument (3) which is or purports to be a public record or instrument required or authorized to be filed with a public office.  *See Guerra v. Rodriguez*, 2012 U.S. Dist. LEXIS 7838, at *13 (E.D. Ky. Jan. 24, 2012); KRS. § 516.030.

The defendant claims that he had probable cause to suspect Smith of forgery based on what appeared to be a "forged signature on the HIDTA reimbursement checks made payable to the Sheriff's office."  [Record No. 19-24]  Peyman alleges that, although the checks had been issued payable to the Sheriff's office in the past, by November of 2012, $28,807.39 was paid directly to the Judge Executive instead.  [Record No. 25, p. 34]     Smith contends that, not only did no such forgery occur, but the Sheriff had no basis to believe that any check had been altered.  [Record No. 31, p. 22]  The plaintiff relies on Sallee's testimony that the money was received by the Fiscal Court after HIDTA lawfully terminated its contract with the Sheriff's office.  [Record No. 27, pp. 32-33]

### d.      Probable Cause Determination

The parties dispute the facts that allegedly gave rise to probable cause.  *Tolan*, 134 S. Ct. at 1865.  In light of this dispute, the Court cannot address the Fourth Amendment claim as a matter of law.  Additionally, finding that the defendant is entitled to qualified immunity based on his statements would require the Court to credit his version of events over that of

Smith's and resolve the factual issues identified above in defendant's favor, which the Court may not do on summary judgment.  As a result, Peyman's motion for summary judgment will be denied with respect to this claim.

### 2.    First Amendment Retaliation

In contrast to the Fourth Amendment claim, motive *is* relevant to Smith's allegation that Peyman arrested him in retaliation for Smith's exercise of his First Amendment rights. *Kennedy v. City of Villa Hills*, 635 F.3d 210 (6th Cir. 2011).  Government officials may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity.  *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007).

In general, to make out a claim of official retaliation for the exercise of First Amendment rights, a plaintiff must show that: (i) he was participating in a constitutionally protected activity, *Leonard*, 477 F.3d at 355; (ii) the "defendant's action injured him in a way likely to chill a person of ordinary firmness from further participation in that activity," *Ctr. For Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821 (6th Cir. 2007); and (iii) the plaintiff's constitutionally-protected activity was a "motivating factor" behind the defendant's actions, *Adair v. Charter County of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006). A "motivating factor" is one "without which the action being challenged simply would not have been taken."  *Leonard*, 477 F.3d at 355.[1]  In proving his case, the plaintiff may rely on

---

[1]        Although the Sixth Circuit has stated that "[p]robable cause is clearly relevant to [a plaintiff's] First Amendment retaliation claims," *Leonard*, 477 F.3d at 355, it has not determined whether, under *Hartman v. Moore*, 547 U.S. 250 (2006), lack of probable cause is an element that must be pled and proved in every First Amendment claim brought pursuant to section 1983.  *See Wesley v. Campbell*, 2015 U.S. App. LEXIS 3239 (6th Cir. Mar. 2, 2015).  However, where, as here, there are unresolved factual issues of probable cause, the Court need not decide whether the lack of probable cause is a necessary element.  *See Leonard*, 477 F.3d at 355.

circumstantial evidence that his protected activities caused the adverse action.  *Conklin v. Lovely*, 834 F.2d 543, 546-47 (6th Cir. 1987).

Smith has satisfied the elements of a First Amendment retaliatory arrest claim.  The plaintiff alleges that he was arrested for constitutionally-protected political speech. According to Smith, "[i]mmediately prior to the arrest of January 14, 2014, the Defendant and the Plaintiff had been engaged in well-publicized public disagreements as to how they were each managing their respective offices."  [Record No. 31, p. 27]  Both officials were interviewed by newspapers and other media, and the plaintiff "had been vocal in his criticism of the way the Sheriff was performing his job."  [*Id.*]  Smith alleges that the arrest caused him to suffer embarrassment and humiliation that would chill people of ordinary firmness from continuing to exercise their constitutional rights as a result; he claims that his arrest was motivated at least in part as a response to the exercise of that right.  Smith's political speech was constitutionally protected, and "arrest is particularly suited to chill" speech.  *Leonard*, 477 F.3d at 361 (citing *Bloch v. Ribar*, 156 F.3d 673, 679-80 (6th Cir. 1998) (a combination of embarrassment and humiliation is sufficient to chill speech)).

Finally, the plaintiffs must show that the exercise of their First Amendment rights was a "substantial" or "motivating" factor in Peyman's decision to arrest Smith.  Because cases involving a defendant's state of mind require plaintiffs to primarily rely on circumstantial evidence and reasonable inferences drawn from the defendant's conduct, the Sixth Circuit has held that summary judgment is inappropriate in resolving this issue.  *Helwig v. Pennington*, 30 Fed. App'x. 516 (6th Cir. 2002); *Wilson v. Seiter*, 893 F.2d 861, 866 (6th Cir. 1990).  Summary judgment is generally warranted in state-of-mind cases only if the nonmoving party "rests merely upon conclusory allegations, improbable inferences, and

-13-

unsupported speculation." *Hill v. Lappin*, 2012 U.S. Dist. LEXIS 167918, at *24 (E.D. Ky. Nov. 27, 2012).   In this case, a reasonable fact-finder, viewing the record evidence in the light most favorable to Smith, could conclude that he was arrested in retaliation for constitutionally-protected behavior.  Smith has tendered sufficient evidence, if accepted by a jury, to support his claim of retaliatory arrest.  Summary judgment is not appropriate where genuine issues of material fact exist, and the defendant's motivation in this case presents such a genuine issue.  *See Ctr. For Bio-Ethical Reform, Inc.*, 477 F.3d at 821.  Therefore, Peyman is not entitled to summary judgment on Smith's First Amendment retaliatory arrest claim.[2]

Further, Peyman is not shielded from liability by the doctrine of qualified immunity. Under the second prong of the qualified immunity analysis, it is well-established that a public official's retaliation against an individual exercising his First Amendment rights is a violation of § 1983.  *Dietrich v. Burrows,* 167 F.3d 1007, 1013 (6th Cir. 1999).  Because retaliatory intent proves dispositive of the defendant's claim to qualified immunity, and this presents a factual question inappropriate for resolution on summary judgment, qualified immunity is unavailing in the present case.

While Smith and Peyman had the right to publically respond to criticism lodged against each by the other, neither are permitted to prevent the other from continuing to exercise his constitutional rights.  If Smith can prove that the arrest was made to retaliate

---

[2]      Summary judgment may nevertheless be proper if "the defendant can show that he would have taken the same action in the absence of the protected activity." *Thaddeus-X v. Blatter*, 175 F.3d 378, 399-400 (6th Cir. 1999).  However, Peyman offers no such evidence.  Instead, his argument, in its entirety, is that "the record does not reflect that Plaintiff Smith engaged in any *protected conduct* nor that adverse action was taken against him because of or motivated by any protected conduct."  [Record No. 30-1, p. 37, emphasis in original]

against his criticism, a reasonable officer should have known that the arrest violated Smith's rights, and Peyman cannot benefit from the doctrine of qualified immunity.  Viewing the evidence in a light most favorable to the nonmoving party, the undersigned concludes that the defendant did not meet his burden to sufficiently show that he is entitled to summary judgment on the plaintiff's retaliation claim as a matter of law.

### B.      Individual Capacity State-Law Claims

Asserting qualified official immunity in his individual capacity as County Sheriff, the defendant also moves for summary judgment on the merits of the plaintiff's state-law claims of malicious prosecution and false imprisonment.

### 1.      Malicious Prosecution

Under Kentucky law, "there are six basic elements necessary to the maintenance of an action for malicious prosecution, in response to both criminal prosecutions and civil actions." *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981).  They are: (i) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings; (ii) by, or at the instance of, the plaintiff [in the original matter]; (iii) the termination of such proceedings in [the original] defendant's favor; (iv) malice in the institution of such proceeding; (v) lack of probable cause for the proceeding, and (vi) damage as a result of the proceeding.  *Id.*  Because "the tort of malicious prosecution is one that has not been favored in the law," *Prewitt v. Sexton*, 777 S.W.2d 891, 895 (Ky. 1989), a plaintiff "must strictly comply with the elements of the tort."  *Davidson v. Castner-Knott Dry Goods Co.*, 202 S.W.3d 596, 602 (Ky. Ct. App. 2006).

The parties do not dispute that Sheriff Peyman arrested Smith and that the criminal charges against him were later dismissed.  [Record No. 1, p. 2]  Accordingly, of the six

-15-

elements, only the fourth (malice in the institution of the proceeding) and the fifth (lack of probable cause) warrant evaluation and further discussion.

Issues of malice and lack of probable cause are intertwined.  Malice may be active, hostile, and demonstrable, in the sense of the defendant's desire to inflict harm or suffering on the plaintiff, but may also be presumed from a "want of probable case."  *Sweeney v. Howard*, 447 S.W.2d 865, 866 (Ky. 1969).  Kentucky law is unclear whether, in the context of multiple charges, the probable cause element requires a malicious prosecution plaintiff to show that no probable cause existed on any of the charges, and Kentucky courts have not addressed directly whether a finding of probable cause on one charged offense precludes a malicious prosecution claim on the remaining charges.  However, both this Court and the United States District Court for the Western District of Kentucky have predicted that the Kentucky Supreme Court would hold that a defendant initiating criminal proceedings on multiple charges is not necessarily insulated in a malicious prosecution case merely because the prosecution of one of the charges was justified.  *Carter v. Porter*, 2011 U.S. Dist. LEXIS 20911, at *4-5 (E.D. Ky. Mar. 1, 2011); *Martin v. Coyt*, 2013 U.S. Dist. LEXIS 39374, at *12-13 (W.D. Ky. Sept. 21, 2012).

Generally speaking, the probable cause determination is a question of law for the Court to decide.  *Isham v. ABF Freight Sys. Inc.*, 2006 Ky. App. Unpub. LEXIS 59, at *8 (Ky. Ct. App. Sept. 15, 2006).  However, where the Court determines that under a certain, reasonable reading of the facts, probable cause was lacking, and the parties dispute those facts, then those fact questions must be submitted to the jury.  *Id.*  As discussed above, in the federal law context, the determination of probable cause in this instance depends on what set of facts the jury would believe.  Therefore, the defendant has not shown an absence of a

genuine issue of material fact.  Because some of the elements of the malicious prosecution claim fall in Smith's favor and the remaining elements are subject to extant genuine issue of material fact, Peyman is not entitled to summary judgment on this claim.

### 2.      False Imprisonment

Kentucky recognizes the civil tort of false imprisonment.  However, such a cause of action cannot be maintained when the officer had "valid or apparently valid" power to arrest. *Rader v. Parks*, 258 S.W.2d 728, 729 (Ky. 1953) ("Where there is a valid or apparently valid power to arrest, the remedy is by an action for malicious prosecution.  The want of lawful authority is an essential element in an action for false imprisonment.").  Based on the foregoing, a plaintiff alleging false imprisonment must establish that his arrest was made without legal authority.  *Id.*  The merits of this claim turn on the grounds for Smith's arrest. *See Lexington-Fayette Urban County Gov't v. Middleton*, 555 S.W.2d 613, 619 (Ky. App. 1977).

A claim of false imprisonment is predicated on the absence of probable cause for the arrest.  *Dunn v. Felty,* 226 S.W.3d 68, 71 (Ky. 2007) (absence of probable cause or other legal authority for arrest is element of cause of action).  As discussed *supra*, a genuine issue of material fact exists regarding Peyman's authority to arrest Smith.  Therefore, the plaintiff is entitled to proceed on his claim of false imprisonment against Smith.

### 3.      Qualified Official Immunity

In the alternative, Peyman asserts the defense of qualified official immunity for the plaintiff's state law claims.  Under Kentucky law, public employees enjoy only qualified official immunity from state law claims when they are sued in their individual capacities. This type of immunity "applies to the negligent performance by a public office or employee

-17-

of: (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis,* 65 S.W. 3d 510, 522 (Ky. 2001). As such, state immunity affords protection from "damages liability for good faith judgment calls made in a legally uncertain environment." *Id.* A finding of bad faith in this context can be predicated "on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known . . . or if the officer or employee willfully or maliciously intended to harm the plaintiff." *Id.* at 523 (citations omitted). Thus, unlike federal law, Kentucky law adopts both an objective and a subjective approach to qualified immunity. *See Phat's Bar & Grill, Inc. v. Louisville-Jefferson County Metro Gov't*, 918 F. Supp. 2d 654, 663 (W.D. Ky. 2013).

Smith argues that Peyman acted in bad faith both objectively (by violating his clearly-established right to be free from arrest and prosecution without probable cause) and subjectively (with a corrupt motive). Because the facts viewed in the light most favorable to Smith indicate that there exists a genuine issue of material fact regarding probable cause, the finder of fact could determine that sufficient facts exist to support a determination that the sheriff's actions were taken in bad faith. For these reasons, the defendant is not entitled to qualified immunity on Smith's malicious prosecution or false imprisonment claims.

### C.    Official Capacity Claims

Smith asserts claims against Peyman in his official capacity as Jackson County Sheriff. Counties do not enjoy the same immunity from § 1983 actions that states enjoy. "The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal

corporations." *Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (internal citation omitted).  Thus, blanket dismissal of federal claims against Peyman in his official capacity as Jackson County Sheriff is improper.  *See Miller v. Whitley County*, 2012 U.S. Dist. LEXIS 116312, at *8 (E.D. Ky. Aug. 17, 2012).  However, local government entities, including counties, "may be held liable under § 1983 only where its policy or custom causes the constitutional violation in question."  *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986)).  Smith's Complaint is devoid of allegations that Jackson County, its Sheriff's Department, or its Sheriff maintained policies and customs that led to the alleged constitutional deprivations.  This requires dismissal of all § 1983 claims against Peyman in his official capacity.

Similarly, the state law claims brought against Peyman in his official capacity will be dismissed based upon governmental immunity.  "A county government is cloaked with sovereign immunity."  *Schwindel v. Meade County*, 113 S.W.3d 159, 163 (Ky. 2003); *see also Doe v. Patton*, 381 F. Supp.2d 595, 602 (E.D. Ky. 2005) ("County governments in Kentucky are cloaked in sovereign immunity, unless such immunity is expressly waived.").  Smith has not alleged that immunity has been waived for any of his state law claims.  Individuals sued in their official capacities are "cloaked with the same immunity as the government or agency [they] represent."  *Schwindel*, 113 S.W.3d at 169.

## IV.

For the reasons outlined above, it is hereby

**ORDERED** as follows:

    1.    Defendant Peyman's Motion for Summary Judgment [Record No. 30] is **GRANTED,** in part, and **DENIED,** in part.

    2.    Plaintiff Smith's claims against Peyman in his official capacity are **DISMISSED** with prejudice.

    3.    Plaintiff Smith's claims against Peyman in his individual capacity remain pending before the Court.

This 18th day of March, 2015.

Signed By:

*Danny C. Reeves*  DCR

United States District Judge